**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN  DIVISION**

**MICHAEL E. RILEY, #90495**                                              **PETITIONER**

**VERSUS**                                    **CIVIL ACTION  NO. 1:04-CV-869-DMR-JMR**

**RONALD KING**                                                              **RESPONDENT**

## ORDER DISMISSING PETITION WITH PREJUDICE

BEFORE THE COURT is the Petition of Michael E. Riley, #90495, seeking a Writ of

Habeas Corpus pursuant to 28 U.S.C. §2254.  And the Court, having carefully considered the

record before it, and the applicable case law, is of the opinion that the grounds sought in the

petition are not well taken and it should be dismissed on all grounds with prejudice.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Petitioner is lawfully in the custody of Franklin Brewer, Warden of the Stone

County Correctional Facility, Wiggins, Mississippi, after being convicted of manslaughter in the

Circuit Court of George County, Mississippi.  The Petitioner was sentenced to serve a term of

twenty (20) years in the custody of the Mississippi Department of Corrections.[1]  *See* Clerk's

Papers (C.P.), p. 101.

Thereafter, the Petitioner appealed his judgment of conviction and sentence to the

Mississippi Court of Appeals, assigning as error the following (as stated by the petitioner):

> A.   The Court erred in not properly advising the jury as to
> where the line was between gross negligence and culpable
> negligence.

---

[1]Respondent notes for the Court that Riley's conviction was the result of a second trial for
the murder of Freddie Dortch.  The first trial ended in a mistrial on October 20, 1998.  *See*
Clerk's Papers (hereinafter "C.P."), p. 44.

B.      The physical evidence does not support a finding by the jury that the defendant fired the shot that killed Frederick Dortch.

C.      The court erred in overruling the defendant's motion to dismiss the case for failure to grant the Defendant a speedy trial, which motion was heard in the absence of defense counsel.

D.      The court erred in denying the defendant the right to a speedy trial.

E.      The verdict of the jury, finding the defendant guilty, was against the overwhelming weight of the creditable evidence and contrary to the law of the state of Mississippi. There was simply not sufficient evidence to find the defendant guilty of culpable negligence.

On April 8, 2003, the Mississippi Court of Appeals affirmed petitioner's judgment of conviction and sentence in a written opinion. *See* Exhibit A. *Riley v. State*, 855 So.2d 1004 (Miss. App. 2003), *reh'g. denied*, July 15, 2003, *cert. denied*, October 2, 2003, (Cause No. 2001-KA-01380-COA).

On July 23, 2004, petitioner filed an "Application For Leave To Proceed In The Trial Court" in the Mississippi Supreme Court, alleging the following:

A.      Petitioner asserts that he was denied due process by the state violating the Due Process Clause of the 14th Amendment to the United States Constitution in that the state presented false and perjured testimony in the presence of the jury.

B.      Petitioner asserts that he was denied the effective assistance of counsel during his trial thereby violating the 6th Amendment to the United States Constitution and Article 3, Sect. 23 of the Mississippi Constitution.

C.      Petitioner asserts that he was denied the effective assistance of counsel during the appellate stage and appeal thereby

2

> violating the 6th Amendment to the United States
> Constitution and Article 3, Sect. 23 of the Mississippi
> Constitution.

On August 30, 2004, the supreme court denied Riley's post-conviction motion, stating, in

pertinent part, as follows:

> After due consideration, the panel finds that Riley's claims that the State
> presented false and perjured testimony are without merit.  Additionally, this issue
> is procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1).  The panel
> further finds that Riley's claims that he was denied effective assistance of counsel
> at trial fail to meet the standards required by *Strickland v. Washington*, 466 U.S.
> 668 (1984) and are procedurally barred pursuant to Miss. Code Ann. § 99-39-
> 21(1).  The panel further finds that Riley's claims that he was denied effective
> assistance of counsel on appeal also failed to meet the standards required by
> *Strickland*.  The panel finds that Riley has failed to make a substantial showing of
> the denial of a state or federal right as required by Miss. Code Ann. § 99-39-27(5).
> Accordingly, Riley's application for post-conviction relief should be denied.

*See* Exhibit B.

In the instant Petition for Writ of Habeas Corpus, Riley raises the following grounds (as

summarized by the Respondent):

> Ground One - Violation of right to due process when the state knowingly
> presented the false testimony of witnesses, Bobby Lawrence and Roy Griffin.

> Ground Two - Ineffective assistance of trial counsel:

>> (a)     Trial counsel failed to impeach state's witnesses, Bobby
>>         Lawrence and Roy Griffin.

>> (b)     Trial counsel failed to investigate the possibility that
>>         petitioner's gun was not the weapon used to kill Frederick
>>         Dortch and failed to present evidence that someone called
>>         City Hall and claimed to have the weapon that was actually
>>         used to kill Frederick Dortch.

>> (c  )   Trial counsel failed to investigate and present evidence that
>>         Roy Griffin had a firearm in his possession at the time of
>>         the shooting which was used to fire the fatal shot.

3

(d)     Trial counsel failed to cross-examine Sheriff Miller about there not being any empty cartridges in the gun that was presented as the murder weapon.

(e)     Trial counsel failed to pursue and put forth evidence that petitioner could not have fired the weapon that killed the victim based on the fact that the victim was shot in the left side of his head.

(f)     Trial counsel failed to object to jury instruction S-2.

(g)     Trial counsel failed to renew his motion for a directed verdict and failed to request a judgment notwithstanding the verdict.

Ground Three - Ineffective assistance of appellate counsel:

(a)     Appellate counsel failed to raise claims of ineffective assistance of trial counsel on direct appeal after being requested to do so by petitioner.

(b)     Appellate counsel deliberately deceived petitioner by indicating if he was paid $3,500 he would get petitioner's conviction overturned or get a time reduction.

Ground Four - Petitioner was denied his constitutional right to a speedy trial.

## II. LEGAL ANALYSIS

This Court will first address the claims which the Petitioner has not raised in a properly procedural manner.  The Petitioner presents claims in this federal habeas corpus petition which have not been presented to the state's highest court in a procedurally proper manner and which are now procedurally barred due to petitioner's own procedural default. *Sones v. Hargett*, 61 F.3d 410 (5th Cir. 1995)(when state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are barred from reviewing those claims); *see also Coleman v.*

*Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)(federal review of a claim is

barred in all cases in which a state prisoner has defaulted his federal claims in state court

pursuant to an independent and adequate state procedural rule); *see also Magouirk v. Phillips*,

144 F.3d 348, 360 (5th Cir. 1998)(an inmate's failure to present claims to the proper state court

creates a procedural default for purposes of federal habeas review). In *Sones*, the Fifth Circuit

stated:

> When, however, state remedies are rendered unavailable by the petitioner's own
> procedural default, federal courts are barred from reviewing those claims.  As the
> Supreme Court stated in *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546,
> 115 L.Ed.2d 640 (1991)
>
>> "[I]f the petitioner failed to exhaust state remedies and the court to
>> which petitioner would be required to present his claims in order to
>> meet the exhaustion requirement would now find the claims
>> procedurally barred, . . . [then] there is a procedural default for
>> purposes of federal habeas . . ." *Id*. at 735 n.1, 111 S.Ct. at 2557
>> n.1."

*Sones v. Hargett*, 61 F.3d at 416.  When "it is obvious that the unexhausted claim would be

procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the

claim procedurally barred from habeas review."  *Sones,* 61 F.3d at 416, quoting *Steele v. Young*,

11 F.3d 1518, 1524 (10th Cir. 1993).

    The record reflects that Riley has failed to proceed in a procedurally proper manner in

that he raises claims in Ground Two (d), (e), (f) and (g) and a portion of Ground Four[2] for the

---

[2]In Ground Four, Riley argues that the time period to be considered pursuant to *Barker v. Wingo*, 407 U.S. 514 (1972), is the period from his arrest to his conviction in the second trial. This time period, however, is not the time period for which Riley sought review on direct appeal. On appeal, the appellate court found that Riley "only cites as error the length of time between the date of the order of the mistrial and the date of the second trial. Therefore, this is the only time period which we review."  *See Riley*, 855 So. 2d at 1008.  As such, respondent submits for the Court that Riley is now precluded from taking issue with the time period between his arrest and

first time in the instant petition.  "If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief."  *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).  Riley did not raise a portion of Ground Four in his direct appeal or in his post-conviction motion, and, although Riley raised the issue of ineffective assistance of trial counsel in his motion for post-conviction relief, Riley did not raise the specific claims that are listed in Ground Two (d), (e), (f) and (g), *supra.*  By raising the specific facts of Ground Two (d), (e), (f) and (g) and the claims in a portion of Ground Four herein for the first time, Riley waived having the Mississippi Supreme Court review the issues on the merits.  Accordingly, Riley has thus defaulted the claims in Ground Two (d), (e), (f) and (g) and a portion of Ground Four and this Court is now precluded from reviewing the claim.

Further, a review of the record reflects that Riley cannot show "cause" under the "cause and prejudice" test necessary to allow this Court to reach the merits of the claims in Ground Two (d), (e), (f) and (g) and a portion of Ground Four despite the procedural bar because no external impediment existed to prevent him from raising and discussing this claim in his post-conviction petition.[3]  *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993).  Therefore, absent a showing

---

mistrial on the basis that he did not allege a speedy trial violation for that specific period of time when pursuing his appeal or post-conviction relief; Petitioner's speedy trial issue *supra* is addressed for the period that encompasses the day of his mistrial through conviction.

[3]The Court notes that the Respondent submits that attorney error has in certain circumstances been held to constitute cause to overstep procedural default; however, in the instant case, this Court agrees with the Respondent that attorney error cannot be claimed because (1) Riley was not entitled to counsel for a post-conviction matter, and (2) Riley filed his motion for post-conviction relief *pro se*, therefore, the failure to assert the specific facts of the claims in

of "cause," it is unnecessary for this Court to consider whether there is actual prejudice.  *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).  Furthermore, there will be no "fundamental miscarriage of justice" if Riley's claims are not heard on the merits.  The "fundamental miscarriage of justice" exception is even more circumscribed than the cause and prejudice exception and is confined to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction."  *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). Riley has not met this standard and the record regarding this case does not establish that a fundamental miscarriage of justice would result if Riley's allegations in Ground Two (d), (e), (f) and (g) and a portion of Ground Four were not considered on the merits.

As regards Ground One and Ground Two (a), (b) and ( c), said claims were raised in Riley's motion for post-conviction relief and held to be procedurally barred by the Mississippi Supreme Court.  As such, said claims are, therefore, precluded from review by this Court. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfil a state procedural requirement, federal habeas is generally barred if the state procedural rule is

---

Ground Two (d), (e), (f) and (g) and a portion of Ground Four in his post-conviction motion is entirely the fault of petitioner. *See Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004)("A state prisoner has no constitutional right to an attorney in state post-conviction proceedings and thus cannot claim ineffective assistance of counsel in such proceedings.")(citations omitted). As such, Riley cannot overstep the procedural default.

independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991); *Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995)).  As noted previously, the state supreme court found the issues which Riley now raises in  Ground One and Ground Two (a), (b) and ©) to be procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1).[4]  The Fifth Circuit Court of Appeals has held that Section 99-39-21(1) is an independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).  The adequacy of the procedural bar applied to Riley's issues in state court depends on "whether Mississippi has strictly or regularly applied it." *Id*. (citing *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)).  However, the petitioner, Riley, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself."  *Id*.  Riley has failed to carry his burden of proving an "inconsistent and irregular" application of the bar stated above and has, therefore, defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule.  *Id*. at 861.

Federal habeas courts are estopped from reviewing state cases applying an independent and adequate state procedural rule unless the petitioner can demonstrate cause and actual prejudice.  *See Coleman*, 501 U.S. at 750; *see also Martin v. Maxey*, 98 F.3d at 849 (*citing*

---

[4]  Section 99-39-21(1) of the Mississippi Code reads: "Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial, and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver."

*Sawyer v. Whitley*, 505 U.S. 333 (1992)).  In explaining the  *cause* necessary for excusing a

default, the Supreme Court instructed that "there must be something *external* to the petitioner,

something that cannot fairly be attributed to him."  *Coleman*, 501 U.S. at 753 (emphasis in

original).  In addressing cause for a procedural default that may be based in attorney error, the

United States Supreme Court has stated as follows:

> We think, then, that the question of cause for a procedural default does not
> turn on whether counsel erred or on the kind of error counsel may have made. So
> long as a defendant is represented by counsel whose performance is not
> constitutionally ineffective under the standard established in *Strickland v.*
> *Washington*, *supra*, we discern no inequity in requiring him to bear the risk of
> attorney error that results in a procedural default.

*Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986).

Although Riley alleges  ineffective assistance of appellate counsel for failure to raise the

claims in Ground Two (a), (b) and (c)), the ineffective assistance of counsel claims do not rise to

the level of "constitutionally ineffective" assistance of counsel as set forth herein *infra* and

therefore cannot constitute cause as prescribed by *Murray*.[5]   Since Riley fails to establish cause,

there is no need to consider whether there was actual prejudice to petitioner.  *Saahir v. Collins*,

956 F.2d 115 (5th Cir. 1992).

As previously stated, the "fundamental miscarriage of justice" exception is even more

circumscribed than the cause and prejudice exception and is confined to cases of actual

innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of

---

[5]Respondent notes for the Court that Riley did not assert, in his post-conviction motion, a
claim of ineffective assistance of appellate counsel for failure to raise the claim in Ground One
on direct appeal and therefore cannot overstep the procedural bar as to Ground One.  *See*
*Edwards v. Carpenter,* 529 U.S. 446, 452, 120 S. Ct. 1587, 1591-92 (2000); *see also Murray v.*
*Carrier,* 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986).

conviction." *Fairman*, 188 F.3d at 644 (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the requisite probability that he was actually innocent, the petitioner must support his allegation with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. Riley fails to establish that a miscarriage of justice will result if his claims are not considered on the merits. Accordingly, this Court is precluded from considering the claims in Ground One and Ground Two (a), (b) and ©) presented in Riley's habeas petition due to his default in the courts of Mississippi.

As regards the claims in Ground Four, such was reviewed by the Mississippi Court of Appeals and denied on the merits. Likewise, the claims in Ground Two (a), (b) and ©) and Ground Three were reviewed on post-conviction motion by the Mississippi Supreme Court and denied on the merits.[6] As a result, under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C.A. § 2241, *et seq*., **and because this issue was decided on the merits, habeas relief cannot be granted with respect to this claim.** *See* **28 U.S.C. § 2254(d) and § 2254(e)(1). Specifically, 28 U.S.C. § 2254(d) provides:** provides:

> (D)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[6]Alternatively, the procedural bar for the claims in Ground Two (a), (b) and (c ) aside, the claims on the merits are addressed herein; however, an alternative analysis of the claim in Ground One is not addressed, which as noted *supra*, was procedurally barred by the state supreme court.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The first exception, subsection (d)(1) applies to questions of law or to mixed questions of fact and law.  *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000).  The second exception, subsection (d)(2), applies to questions of fact.  *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997).   The claims in Grounds Two (a), (b) and ( c), Three and Four are  mixed questions of law and fact. Therefore, subsection (1) of § 2254(d) governs the claims and dictates that a federal court cannot grant habeas relief to the petitioner unless it determines that the state court's decision involved an unreasonable application of the law to the facts.  The "unreasonable application" standard of review of a state court decision does not mean that a federal court may grant habeas relief based on its simple disagreement with the state court decision; this would amount to nothing more than *de novo* review.  *See Williams v. Cain*, 125 F.3d 269, 276-77 (5th Cir. 1997).  Unless there is such an unreasonable application, there exists a presumption that state court factual findings are correct.  *Knox v. Johnson*, 224 F.3d 470 (5th Cir. 2000).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000), the United States Supreme Court concluded that §2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id*. at 1523.  A state court's decision is contrary to federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of

11

"materially indistinguishable facts." *Id*. at 1523. A state court's decision involves an unreasonable application of federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies the principle to facts of the prisoner's case; this application of law to facts must be objectively unreasonable. *Id*. at 1521. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. *See also Ramdass v. Angelone,* 530 U.S. 156, 120 S.Ct. 2113 (2000); *Chambers v. Johnson*, 218 F.3d 360 (5th Cir. 2000); *Hill v. Johnson*, 210 F.3d 481 (5th Cir. 2000).

Nevertheless, under § 2254(d)(2), grounds may still merit review if those facts to which the appellate courts applied the law were determined unreasonably in light of the evidence presented. Because the state appellate courts are presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). Petitioner Riley failed to meet said burden and this Court is barred from reviewing issues already decided on the merits.

Specifically, in Ground Two (a), (b) and ©), Riley raises claims of ineffective assistance of trial counsel. As stated previously, the Mississippi Supreme Court reviewed the claims on post-conviction motion and found that the claims did not satisfy the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984).

To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland* by demonstrating both

constitutionally deficient performance by counsel and actual prejudice as a result of such

ineffective assistance.  *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994)

(summarizing the *Strickland* standard of review).  A petitioner's failure to establish both prongs

of the *Strickland* test warrants rejection of his claim.  *Moawad v. Anderson*, 143 F.3d 942, 946

(5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986)(overruled on other

grounds).

In order to satisfy the first prong of *Strickland*, the petitioner must show that defense

counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S.

at 688.  Riley's ineffective assistance of trial counsel claims primarily stem from petitioner's

assertion that his gun did not fire the fatal shot but, rather, that Roy Griffin, using his own gun,

actually fired the shot that killed the victim.  Riley argues that had defense counsel adequately

investigated this theory, counsel would have been prepared to assert the theory through the

presentation of defense witnesses and the questioning of the state's witnesses.  In regards to the

duty of defense counsel to investigate, the *Strickland* Court stated:

> [S]trategic choices made after thorough investigation of law and facts relevant to
> plausible options are virtually unchallengeable; and strategic choices made after
> less than complete investigation are reasonable precisely to the extent that
> reasonable professional judgment support the limitations on investigation. In other
> words, counsel has a duty to make reasonable investigations or to make a
> reasonable decision that makes particular investigations unnecessary. In any
> ineffectiveness case, a particular decision not to investigate must be directly
> assessed for reasonableness in all the circumstances, applying a heavy measure of
> deference to counsel's judgments.

*Id*. at 690-91.  As a general matter, this Court agrees with the Respondent that nothing in the

record signifies that defense counsel did not adequately investigate his case, that he was

unprepared to defend his client or that decisions not to pursue a particular line of inquiry before

or during trial were professionally unreasonable.  Further, it is noted that Riley was the only person who allegedly saw Roy Griffin with a gun at the time of the shooting.

In claim (a),  Riley asserts that defense counsel's failure to impeach the "false" testimony of Roy Griffin and Bobby Lawrence constituted ineffective assistance of counsel.  Riley takes issue with Griffin's testimony because petitioner claims that Griffin changed his story after being prompted by the prosecution.  Riley alleges that Griffin first stated that petitioner put the gun to the victim, Freddie Dortch's, head and fired.  Riley argues that Griffin's version was contrary to the autopsy report and subsequent testimony by Dr. Downs, who testified that the shot had to have been fired two to three feet away from the victim.  Riley alleges that the prosecutor, through her questioning, prompted Griffin until he testified to facts that would not contradict the findings in the autopsy report.  Riley asserts that defense counsel allowed this prompting by the prosecution to go unchallenged and thereafter took no steps during cross-examination to impeach Griffin.

The record reflects that Griffin testified to the following facts:  Riley approached Griffin while he was sitting in his own car and placed a loaded, cocked handgun to Griffin's head and asked Griffin about a gun. *See* S.C.R. at 74, 77.  Shortly thereafter, Freddie Dortch got out of Griffin's car, walked up to Riley and asked Riley, "Man, what's going on? *See* S.C.R. at 75. Griffin indicated that Riley and Dortch had words and that Riley turned around and shot Dortch. *Id*.  The prosecutor asked Griffin how close Riley and Dortch were to each other when the shot was fired and Griffin responded that they were "pretty close." *See* S.C.R. at 77.  On cross-examination, defense counsel asked Griffin how close Dortch was to Riley when the shot was fired and again Griffin stated that they were close. *See* S.C.R. at 87-88.  A review of

14

the record clearly shows that the prosecutor did not prompt Griffin to give a specific answer.  As noted above, when asked how far apart Riley and Dortch were from each other at the time of the shooting, Griffin testified that the two men were "pretty close."  At no time did Griffin state that Riley and Dortch were two to three feet apart nor was there testimony from Griffin, at least not in this trial, that Riley put the gun to Dortch's head and fired.  The Respondent submits to the Court that it is unclear as to what testimony Riley is referring when he alleges that Griffin changed his story upon prompting by the prosecutor because Griffin never wavered in his testimony that Riley and Dortch were "close" together at the time of the shooting; as to the allegation that defense counsel was ineffective for failing to impeach Griffin, respondent submits that there was nothing to impeach.  In any event, the fact that Griffin was testifying that Riley and Dortch were close together at the time of the shooting played in Riley's favor given the fact that Dr. Down's was going to testify that the fatal shot had to have been fired from a gun that was at least two feet from the victim at the time it was fired– a fact that defense counsel was certainly aware of when he started this trial.

Riley also asserts that defense counsel was ineffective for failing to impeach Bobby Lawrence after Lawrence allegedly lied about witnessing the shooting.  Riley argues that Lawrence, who testified as a defense witness, could not have witnessed the shooting as he was inside Annie Williams' trailer at the time Dortch was killed. The Respondent notes that Lawrence has attached an affidavit to his petition in which Annie Williams attests that she saw Lawrence exit her trailer after the shooting had occurred.

Firstly, Bobby Lawrence was a witness called by the defense and the Respondent submits that typically defense counsel does not have witnesses waiting in the wings who can impeach a

defendant's own witness should the need arise.  Secondly, the Respondent submits that defense counsel did not expect Lawrence to testify that he saw Riley shoot the victim and if he did, it is more likely than not that defense counsel believed that Lawrence's testimony about what he saw was going to lend credence to the theory that the shooting was a mistake or accident.  Thirdly, the Respondent submits that if Lawrence was inside Ms. Williams' trailer at the time of the shooting, there is nothing in the record and nothing presented by Riley to indicate that defense counsel was aware of this fact.  Obviously, defense counsel thought Lawrence saw something that would be helpful to petitioner's case or he would not have put Lawrence on the stand in the first place. Further, the Respondent submits that the affidavit signed by Ms. Williams is not helpful to Riley's claim of ineffectiveness as it was not signed until June 8, 2004– some seven (7) years after the shooting. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *See Strickland*, 466 U.S. at 689.

For the reasons stated, this Court agrees with theRespondent that Riley has failed to establish that defense counsel was deficient in not impeaching Roy Griffin and Bobby Lawrence.

In claims (b) and (c), Riley argues that defense counsel was ineffective in failing to investigate the possibility that petitioner's gun was not the gun used to kill Dortch.  Riley asserts that Roy Griffin had a gun in his possession at the time of the shooting and that it was Griffin's gun that fired the fatal shot.  Riley states further that his "second gun" theory is supported by the fact that someone called City Hall on December 31, 1997, and indicated that the gun that was

16

used to kill Dortch would be turned in at City Hall.  Riley attaches an affidavit from Roxie Rouse in which she attested that she was present when Terry Miles informed Sheriff Miller about the phone call.  *See* "Petition."

However, the record reflects that there is no evidence that Griffin had a gun at the time of the shooting; Riley is the only person who allegedly saw Griffin with a gun.  *See* S.C.R. at 183. Griffin testified that he did not have a gun in his possession at the time of the shooting.  *See* S.C.R. at 76.  Defense witness, Hosea Blackston, was asked if he saw anyone other than Riley with a gun on the night of the shooting and he responded negatively.  *See* S.C.R. at 156.  Further, the affidavit attested to by Ms. Rouse merely indicates that Sheriff Miller was informed of a telephone call that "someone" was coming to turn in the gun used to kill Dortch.  Yet, there is no evidence that a second gun was ever produced.  Riley's complaint is that defense counsel should have done more to bolster the second gun theory;  but there is no indication that there existed any evidence, other than Riley's self-serving statements, that a second gun existed.  The evidence in this case is overwhelmingly against Riley.  Everyone who was present at the time of the shooting and testified at trial saw only Riley with a gun and saw only Riley arguing with the victim.  *See* S.C.R. at 71-90, 130-201.  Even Riley admitted on the stand that he could have shot Freddie Dortch.  *See* S.C.R. at 195.  Riley has not established that defense counsel was deficient in his performance.

 However, assuming *arguendo* that Riley met the first prong of *Strickland*, he has not proven the prejudice prong.  To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable.  In *Strickland*, the court explained that the

defendant must make a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable,"(*Strickland*, 466 U.S. at 687) and demonstrate a reasonable probability that but for counsel's errors, the results of the proceeding would have been different. *Id*. at 694. *See also Mayabb v. Johnson,* 168 F.3d 863, 869 (5th Cir. 1998); *Goodwin v. Johnson,* 132 F.3d 162, 170 (5th Cir. 1998). A habeas corpus petitioner must affirmatively plead this resulting prejudice. *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). If there were errors, such were not "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Riley has not shown "but for" counsel's alleged errors the proceedings would have been different. Accordingly, the state supreme court's finding that trial counsel was not ineffective under the *Strickland* test was neither contrary to nor an unreasonable application of clearly established federal law.[7] As such, habeas review of the claims in Ground Four should be denied.

In Ground Three, Riley raises two claims of ineffective assistance of appellate counsel. In his first claim, Riley complains that appellate counsel was ineffective in that he failed to assert ineffective assistance of trial counsel on direct appeal. In his second claim, Riley argues that he was deceived by his appellate counsel because appellate counsel told him that if Riley paid $3,500, he would get petitioner's conviction overturned or get Riley's sentence reduced. Said second claim is not an issue that goes to the effectiveness of appellate counsel.

_____

[7] "It bears repeating that the test for federal habeas purposes is *not* whether [the petitioner] made the showing required under *Strickland*]. Instead, the test is whether the state court's decision– that [the petitioner] did not make the *Strickland*-showing– was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim." *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004).

In reviewing the performance of appellate counsel, the two-pronged test of *Strickland* is likewise applied. *See Evitts v. Lucey*, 469 U.S. 387, 397-399 (1985). Further, the Respondent submits that the relevant Supreme Court law for analyzing ineffective assistance of appellate counsel claims is *Jones v. Barnes*, 463 U.S. 745 (1985). In *Jones,* the court stated that appellate counsel does not have a duty to raise every "colorable" claim on appeal. *Jones*,  463 U.S. at 751-754.

On appeal, petitioner's appellate counsel raised five (5) issues.  The Court agrees with the Respondent that Riley's appellate counsel acted in accordance with *Jones*, *supra,* and presented argument for the issues he believed to be viable.  Accordingly,  Riley's appellate counsel would not have been deficient in deciding to forego raising the ineffective assistance claims on direct appeal.

As has been demonstrated above, the allegations of ineffective assistance of counsel failed to meet the deficiency prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct 2052, 80 L.Ed.2d 674 (1984).  However, assuming  *arguendo* that Riley met the first prong of *Strickland*, which is denied, he has not proven the prejudice prong, which he must do in order to prevail.  As stated above, to prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. In *Strickland*, the court explained that the defendant must make a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable,"(*Strickland*, 466 U.S. at 687) and demonstrate a reasonable probability that but for counsel's errors, the results of the proceeding would have been different.  *Id*. at 694.  Further, the Fifth Circuit has held that "[a]n attorney's

failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kilmer*, 167 F.3d 889, 893 (5th Cir. 1999). As such, Riley has not shown "but for" counsel's alleged errors the proceedings would have been different.  Accordingly, there was no lapse in professional performance to meet either the deficiency prong or the prejudice prong of *Strickland*.  The state supreme court's decision was correct in finding no merit to Riley's claims of ineffective assistance of appellate counsel.

In Ground Four, Riley argues that he was denied his constitutional right to a speedy trial. In the instant petition, Riley takes issue with the entire time period between his arrest and commencement of his second trial;  however, as noted previously, the state supreme court found that Riley's assertion of error on speedy trial grounds only encompassed the time period between the date of his mistrial and the date his second trial began.  *See Riley*, 855 So. 2d at 1008. As such, the period of time in question that is properly before this Court is the time period between petitioner's mistrial (October 20, 1998)(*See* C.P., p. 44) and the date his second trial began on January 17, 2001.[8]

On appeal, the Mississippi Court of Appeals conducted a detailed analysis of the delay pursuant to the *Barker*[9] factors and found as follows:

_____

[8]Even if the Court were to consider the time period between arrest on December 30, 1997, and the first trial which commenced and ended on October 20, 1998, the ten (10) month time period that elapsed is not presumptively prejudicial and therefore would not trigger an analysis under the remaining *Barker* factors. *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993)(citing *Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993)(recognizing that a one (1) year delay is generally presumptively prejudicial.).

[9]*Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972).

20

> In conclusion, the analysis of the *Barker* factors does not compel the conclusion that Riley was denied a speedy trial.  The trial court found good reason for the delay for the period between February 17, 1999, and January 2000, and we agree with this finding.  However, there were a number of continuances occurring after January 2000 which should be charged to both the State and Riley.  But more importantly, Riley never asserted his right to a speedy retrial and failed to show any actual prejudice resulting from the delay in being retried.  Thus we find no merit to the assertion that he was denied his constitutional right to a speedy retrial.

*See Riley*, 855 So. 2d at 1010-1011.  This finding by the state court is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1) which provides that a "determination of a factual issue made by a State court shall be presumed to be correct" and that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As noted by the state appellate court, allegations of constitutional speedy trial violations are governed by the four-pronged test in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972). In *Barker*, the Supreme Court announced four factors to be weighed in reaching that determination:  (1) length of delay, (2) reason for the delay, (3) accused's assertion of the speedy trial right, and (4) prejudice to the accused.  These factors must be considered together, and no single factor is determinative.

A.  Length of Delay: This factor serves as a "triggering mechanism." *Id*. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay is necessarily dependent upon the peculiar circumstances of the case." *Id*. Generally, "[t]he relevant period of delay is that following accusation, either arrest or indictment, whichever occurs first." *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993)(*citing Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975)). Here, as

21

previously noted, the delay at issue is the time period between mistrial and retrial. In the Fifth

Circuit, a one year delay is routinely recognized as "presumptively prejudicial." *Id*. (citing *Nelson*

*v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993)). In Mississippi, the supreme court has generally

held that a delay of eight (8) months or longer is "presumptively prejudicial." *See State v.*

*Woodall*, 801 S0.2d 678, 682 (Miss. 2001)(*citing Smith v. State*, 550 So.2d 406, 408 (Miss.

1989). In the instant case, Riley's first trial ended in a mistrial on October 20, 1998, and the

second trial began on January 17, 2001.  The period between mistrial and retrial was some

twenty-eight (28) months (or as determined by the state appellate court, 818 days) which

obviously falls in the category of "presumptively prejudicial" and thus, triggers the necessity of

balancing the remaining *Barker* factors.

    B. Reason for the Delay: The appellate court found and the record supports the following

chronology of relevant dates:

| | |
|---|---|
| October 19, 1998 | First trial |
| October 20, 1998 | Mistrial ordered (*See* C.P., p. 44) |
| November 17, 1998 | Order of continuance-requested by the state because first trial resulted in mistrial as the jury was unable to reach a verdict. Continued to February 1, 1999.  (*See* C.P., p. 45) |
| January 26, 2000 | Motion to dismiss filed-Riley asserts that: (1) he had his retrial set for February 1, 1999, (2) he will be unable to locate all of his witnesses, (3) he has been deprived of his rights guaranteed in the U.S. Constitution and the Mississippi Constitution.  (*See* C.P., p. 49) |

|                   | Order of continuance by the court as a result of its review of the motion to dismiss. Case continued to March 23, 2000.  (*See* C.P., p. 51) |
|-------------------|---|
| February 2, 2000  | Order denying motion to dismiss.  (*See* C.P., p. 54) |
| March 20, 2000    | Order of continuance-requested by Riley because he needed a copy of the transcript before he would be ready for trial. Case continued to July 3, 2000, for status and July 31, 2000, for trial.  (*See* C.P., p. 59) |
| July 31, 2000     | Order continuing trial-requested by the state to have a necessary witness present that was out of the country. Case continued to October term of court.  (*See* C.P., p. 69) |
| October 23, 2000  | Order of continuance– prosecutors for the state, attending prosecutors conference and trial judges attending judicial conference. Case continued to January 16, 2001.  (*See* C.P., p. 68) |
| January 16, 2001  | Order of continuance-the State could not get a needed witness to trial. Case continued to January 17, 2001. (*See* C.P., p. 99) |
| January 17, 2001  | Second trial |

*See also Riley*, 855 So. 2d at 1008.  Clearly, the majority of continuances requested were

requested by the state.  Thus, from a numbers-only perspective (nearly twenty-two (22)

months), the reason for delay weighs against the state.  The Respondent submits,

however, that the delay caused by the state should be somewhat mitigated as both the trial

court and appellate court found that there was good cause for each continuance

attributable to the state.  Further, it is noted that the delay from January 26, 2000, to July

31, 2000, of more than six months is attributable to Riley because he filed a motion to dismiss which the court had to take under advisement, and then Riley waited more than a month after the court denied the motion to determine that he needed the transcript from the first trial, thus causing further delay.

C.  Defendant's Assertion of the Right: The third consideration under *Barker* is whether the defendant effectively asserted his right to a speedy trial.  On January 26, 2000, Riley, through his attorney, filed a "Motion To Dismiss" in which he raised the speedy trial issue. *See* C.P. p. 49.  In his motion, Riley did not request a speedy trial but rather, asked for dismissal. The appellate court found that the motion to dismiss did not constitute a demand for a speedy trial and, therefore, weighed this factor against petitioner.  *See Riley*, 855 So. 2d at 1010.  This Court agrees.  It is well established that a request for dismissal is not a valid demand for a speedy trial. *See Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994)("[A]n assertion that charges be dismissed for a speedy trial violation is not a value protected under *Barker.*")(*citing  Hill v. Wainright*, 617 F.2d 375, 379 (5th Cir. 1980).   Accordingly, this factor is weighed against petitioner.

D. Prejudice to the Defendant:  The fourth and final factor to be contemplated is prejudice to the accused.  The interests which the constitutional right to a speedy trial seeks to safeguard are:  (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired.  *Barker*, 407 U.S. at 532.  The Supreme Court also noted that "the most serious" of these is the last, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*.

On appeal, the state court resolved the prejudice factor as follows:

> Riley has not identified any particular prejudice that he has suffered.  When a
> defendant does not demonstrate that he has been prejudiced by the delay, then an
> appellate court cannot find prejudice to the defendant.  Since Riley has shown
> neither actual prejudice that he suffered in the defense of his case nor an
> interference with his liberty, this factor cannot weigh in his favor.

*See Riley*, 855 So. 2d at 1010 (citation omitted).  In the instant petition, Riley alleges prejudice in

the following ways:

> But the petitioner will show that he was incarcerated the entire time from the date
> of arrest until the date of his conviction.  Petitioner lost his employment for which
> he held for numerous years, even the close relationship he had with his family.
> The time spent in jail had a detrimental impact on his life and his family to this
> day.  Having his liberty taken from him and the living under the cloud of anxiety,
> suspicion was and still is prejudice to this petitioner.

*See* "Petition," p. 6.  In regards to oppressive incarceration, the Court questions the truthfulness

of Riley's statement that he was incarcerated from the date of his arrest until conviction. During a

motion hearing on January 16, 2001, Riley was not present in the courtroom and the judge asked

defense counsel if Riley was out on bond and defense counsel answered affirmatively.  *See*

S.C.R. at 7.  At trial, Riley indicated that he got out of jail after twenty (20) months.  *See* S.C.R.

at 199.  If true, Riley would have been released around August or September of 1999 which

coincides with an appearance bond that was signed by Riley on September 15, 1999.  *See* C.P., p.

48.  Based on the record in this cause, Riley was not incarcerated from arrest until conviction, at

least not for the crime before this Court.[10]  Thus, it is discerned from the record that during the

---

[10]During the sentencing hearing, the prosecutor pointed out that Riley was convicted of
assault on a police officer in September of 1999.  *See* S.C.R. at 233.  Thus, it is possible that
Riley was sentenced to a term of imprisonment for assaulting the police officer.  The period of
time that Riley was re-incarcerated, if any,  pursuant to an assault charge, however, has nothing
to do with the speedy trial issue currently before this court.

time period between mistrial and retrial, Riley was actually incarcerated for the charge of murder for eleven (11) months and was free to await trial for some sixteen (16) months.

   As to the second interest, the *Barker* court stated that "[t]he time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." *Barker*, 407 U.S. at 532.  Certainly any jail time for Riley would have impacted his employment and placed a strain on his family relationships; other factors, however, were in play; as pointed out by the prosecutor during the sentencing phase, Riley was convicted of other charges: two (2) counts of aggravated assault in 1992, charged with the murder in this cause in 1997 and convicted of one count of assault on a police officer in 1999. *See* S.C.R. at 233-234.  Finally, the Court must address if delay caused any impairment to petitioner's defense;  there is nothing in the record indicating that the delay was somehow detrimental to Riley's defense.  Based on the foregoing assertions, the prejudice factor weighs against the petitioner.

   This Court is of the opinion that Riley does not make the necessary showing that the state deprived him of a speedy trial.  Accordingly, the state supreme court's decision was not contrary to or an unreasonable application of law to the facts in the instant case, and habeas relief in Ground Four will be denied.

   **IT IS, THEREFORE, ORDERED AND ADJUDGED** that the relief sought in the Petition of Michael E. Riley, seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254, be and is hereby **DENIED** and the instant Petition is hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED AND ADJUDGED** that as all the rights and liabilities as to all the parties have been resolved that a Final Judgment be entered in this cause.

**SO ORDERED AND ADJUDGED** this the __13th_____ day of April, 2007.

/S/   DAN M. RUSSELL, JR.
**UNITED STATES DISTRICT JUDGE**

27